UNITED STATES DISTRICT COURT          <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                :
HECTOR LOPEZ,                       :
                                :
                   Petitioner,    :      <u>MEMORANDUM AND ORDER</u>
                                :
        - against -            :      11-CV-2706 (JG)
                                :
WILLIAM LEE,                      :
                                :
                   Respondent.   :
----------------------------------------------------------------x
A P P E A R A N C E S :

        HECTOR LOPEZ
                # 95-A-7409
                Green Haven Correctional Facility
                P.O. Box 4000
                Stormville, New York 12582

                Petitioner, *Pro se*

        CHARLES J. HYNES
                District Attorney, Kings County
                350 Jay Street, Renaissance Plaza
                Brooklyn, New York 11201
        By:    Leonard Joblove
                Camille O'Hara Gillespie

                Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Hector Lopez, who is currently incarcerated at Green Haven Correctional Facility,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After a jury trial in the

Supreme Court of New York, Kings County, Lopez was convicted of two counts of murder in

the second degree, a single count of arson in the first degree and four counts of assault in the first

degree.  Lopez was sentenced, as modified on appeal, to concurrent terms of imprisonment of 25

years to life on each murder count and lesser concurrent terms on the remaining counts.  He now

seeks habeas relief from his conviction and sentence on the following grounds:  (1) the state court improperly refused to instruct the jury that testimony of an accomplice could not establish guilt unless corroborated; (2) Lopez was arrested at his home without a warrant or probable cause in violation of the Fourth Amendment; and (3) the government unlawfully withheld information, including the full extent of the benefits it provided to a witness.  For the reasons stated below, the petition is denied.

## BACKGROUND

A.      *The Offense Conduct*

In the early morning hours of June 21, 1994, Lopez set fire to an apartment building in Brooklyn, New York.  The building was the home of Jose Rivera, who was romantically involved with Christina Morales, Lopez's ex-girlfriend and the mother of his children.  Rivera, the presumed target of the fire, was not home at the time.  Two residents of the building died of smoke inhalation.  Two other residents were seriously injured and five firefighters also sustained injuries.

Lopez was arrested and charged with multiple counts of murder in the second degree, in violation of N.Y. Penal Law § 125.25(2) & (3); arson in the first degree, in violation of N.Y. Penal Law § 150.20(1); and assault in the second degree, in violation of N.Y. Penal Law § 120.05(3).

While these charges were pending, Lopez conspired with his girlfriend, Carmen Matos, to murder Rivera and Morales.  Lopez and Matos were both charged with conspiracy, attempted murder, witness-tampering and criminal solicitation charges.  After his conviction on the murder, arson and assault charges, Lopez pleaded guilty to the post-fire conspiracy charge. He was sentenced to a prison term of four and one-half to nine years, to run concurrently with his

2

other sentences.  Lopez does not challenge his conviction or sentence in connection with the conspiracy charge in his habeas petition.

B.     *Trial Proceedings*

Before trial, Lopez filed an omnibus motion seeking, *inter alia*, suppression of evidence obtained as a result of Lopez's arrest.  He claimed that the arrest was warrantless and without probable cause and, thus, in violation of the Fourth Amendment.

In a decision and order dated October 3, 1994, the trial court denied Lopez's motion to suppress evidence obtained as a result of his arrest.  The court explained that Lopez's "motion papers provide only conclusory legal grounds for the relief sought.  They do not provide sufficient allegations of fact . . . ."  Decision and Order at 1, *People v. Lopez*, No. 7529/94 (N.Y. Sup. Ct. Kings Cnty. Oct. 3, 1994).  Lopez renewed his motion to suppress several months later, and the trial court again denied the motion without a hearing.

Lopez's trial on the murder, arson and assault charges took place over several days in August and September 1995.[1]  Matos testified against Lopez pursuant to a cooperation agreement with the government.[2]  The existence and terms of the cooperation agreement were disclosed to Lopez prior to trial.  Both the original cooperation agreement and an amended agreement were admitted into evidence.

Matos testified that Lopez had asked her to get Rivera's home address from the Department of Motor Vehicles, which she did.  Matos also testified that after Lopez's arrest, he

---

[1]      A trial on these charges was set to begin on July 27, 1995, but the court disbanded the jury before it was sworn after determining that belated disclosures by the government had left the defense without adequate time to prepare for trial.  July 27, 1995 Tr. 589–94, 623.

[2]      After testifying against Lopez, Matos pleaded guilty to charges of second degree criminal solicitation and was sentenced to a five-year term of probation in accordance with her cooperation agreement.

admitted to her that he had set the fire, Trial Tr. 440–42, and that he wanted to have Rivera and Morales killed, *see, e.g.*, *id.* at 448.

On September 8, 1995, the jury found Lopez guilty of two counts of murder in the second degree, one count of arson in the first degree and four counts of assault in the first degree. On October 2, 1995, the trial court sentenced Lopez to:  (i) two consecutive prison terms of 25 years to life for the two murder counts; (ii) a prison term of 25 years to life for the arson count, to run concurrently with the murder sentences; (iii) two prison terms of 5 to 15 years for two of the assault counts and two prison terms of 3 to 9 years for the two remaining assault counts, all to run consecutively to each other and to the other sentences.  Oct. 2, 1995 Tr. 25.  The total term of imprisonment imposed was 66 years to life.  *Id.* at 26.

C.      *Direct Appeal*

Lopez appealed his convictions and sentence to the Appellate Division of the Supreme Court of New York, Second Department.  Lopez asserted two arguments on appeal. First, he argued that the trial court should have instructed the jury that it could not convict Lopez on the basis of Matos's testimony unless her testimony was corroborated because there was evidence that Matos was an accomplice to the charged crimes.  Second, he argued that the trial court erred in imposing some of the sentences consecutively rather than concurrently.

The Appellate Division affirmed the convictions but modified the judgment so that the sentences would all run concurrently.  *See People v. Lopez*, 694 N.Y.S.2d 674, 675 (App. Div. 2d Dep't 1999).  It rejected Lopez's argument that the jury should have been instructed that Matos's testimony had to be corroborated "as there is no evidence from which the jury could reasonably infer that [Matos] was an accomplice."  *Id.*  Lopez sought leave to appeal to the New

York Court of Appeals.  His application for leave to appeal was denied on November 30, 1999.
*People v. Lopez*, 724 N.E.2d 387 (N.Y. 1999) (Levine, J.).

D.    *State Collateral Proceedings*

1.    *The Motion To Vacate*

On December 30, 1996 – while his direct appeal was still pending – Lopez moved
to vacate his judgment of conviction pursuant to § 440.10 of the New York Criminal Procedure
Law.  In his § 440.10 motion, Lopez argued that the government had (i) failed to turn over the
complete transcripts of a witness's testimony before the grand jury, as required by New York
law; (ii) improperly pressured and coached Matos to testify falsely against Lopez; and (iii) failed
to disclose all of the benefits Matos had received in exchange for her cooperation.  In support of
his motion, Lopez submitted an affidavit signed by Matos in which she asserted that her
testimony against Lopez had been false and that the prosecution had pressured her to lie.

In a decision and order dated November 10, 1998, the Kings County Supreme
Court denied Lopez's § 440.10 motion.  The court held that Lopez's claim that the government
had failed to turn over the complete grand jury transcripts of one of the trial witnesses was
procedurally barred because Lopez could have raised that issue in the trial court.  Decision and
Order at 2, *People v. Lopez*, No. 7529/94 (N.Y. Sup. Ct. Kings County Nov. 10, 1998).  In
addition, the court held that the violation of any duty to disclose the transcripts was non-
prejudicial.  *Id.*

The court rejected Lopez's claim that the government had pressured Matos to lie.
The court held that Matos's affidavit was "far too unreliable to justify the conclusion that it could
have had any impact on the verdict.  Recantation evidence is inherently unreliable and standing
alone is insufficient to require setting aside a conviction."  *Id.* at 2–3.

5

As for Lopez's claim that the government had not disclosed all of the benefits it provided to Matos, the court found that the cross-examination of Matos demonstrated that "the benefit conferred on her was substantial."  *Id.* at 3.  The court also held that, in light of the "overwhelming evidence" of Lopez's guilt, any nondisclosure of the details of the benefits provided to Matos "would constitute harmless error."  *Id.*

According to the government, Lopez did not seek leave to appeal the denial of his § 440.10 motion to the Appellate Division.

2.      *The Application for a Writ of Error* Coram Nobis

On May 20, 2002, Lopez applied to the Appellate Division for a writ of error *coram nobis* arguing that he had received ineffective assistance from the attorney that handled his direct appeal.[3]  Lopez argued that his appellate counsel had failed to argue that Lopez had received ineffective assistance from his trial counsel.  The asserted deficiencies of Lopez's trial counsel were the failures to: (i) raise the fact that the transcript of a witness's testimony was not provided to Lopez prior to trial; (ii) establish a record that all of the benefits received by Matos were not disclosed; (iii) disclose prosecutorial misconduct; (iv) request a hearing on whether evidence obtained from a search of Lopez's car should have been suppressed; and (v) access the trial transcripts when preparing Lopez's § 440.10 motion.

The Appellate Division denied the *coram nobis* application on October 7, 2002, stating without explanation that Lopez had "failed to establish that he was denied the effective assistance of appellate counsel."  *People v. Lopez*, 751 N.Y.S.2d 407, 407 (App. Div. 2d Dep't 2002).

---

[3]      "In New York, coram nobis is the appropriate remedy for ineffective assistance of appellate counsel."  *Sweet v. Bennett*, 353 F.3d 135, 141 n.7 (2d Cir. 2003).

E.      *The Present Petition*

Lopez's petition was filed in late May 2011 and was received in this Court on June 2, 2011.[4]  In his petition, Lopez asserts three grounds for federal habeas relief.  First, he argues that he was denied an "accomplice in fact charge" with respect to Matos.  Pet. ¶ 13, ECF No. 1.  Second, he argues that the police arrested him in his home without probable cause.  *Id.*  Finally, he argues that the government "knowingly withheld evidence in [his] trial, and failed to disclose all benefits provided to a witness."  *Id.*

Lopez provided no indication in his habeas petition of what evidence he was claiming was withheld, other than the benefits provided to a witness.  At oral argument, he identified two additional pieces of information that he claims were unlawfully withheld.  First, he claims the government failed to disclose that Matos had planted a gun in his car.  Second, he claims the government failed to disclose photographs of the crime scene that show a carburetor and a melted bucket.

DISCUSSION

A.      *Timeliness of the Petition*

As part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress established a one-year statute of limitations for federal habeas petitions brought by state prisoners.  *See* 28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[4]      A *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials for forwarding to court.  *See Noble v. Kelly*, 246 F.3d 93, 97–98 (2d Cir. 2001).  At oral argument, Lopez stated that he mailed his petition in late May 2011.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The limitations period is tolled while a petitioner is pursuing collateral review in state court.

*Id.* § 2244(d)(2).

AEDPA's one-year limitations period is also subject to equitable tolling. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). Equitable tolling is available only if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 540 U.S. 408, 418 (2005)); *see also Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011); *Dillon v. Conway*, 642 F.3d 358, 362 (2d Cir. 2011).

Equitable tolling is appropriate "only in 'rare and exceptional circumstances.'" *Harper*, 648 F.3d at 136 (quoting *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003)). Moreover, "courts do not apply its requirements mechanistically." *Id.* The decision to apply equitable tolling principles "must be made on a case-by-case basis." *Id.* (quoting *Holland*, 130 S. Ct. at 2563) (internal quotation marks omitted).

Here, the one-year limitations period began to run, at least for most of Lopez's claims, when his state conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A). With respect to his claims that he was denied an accomplice-corroboration charge, arrested without probable

cause, and not informed of all the benefits provided to a witness, Lopez does not claim that there

was an unconstitutional state-created impediment to his seeking habeas relief, that the rights he

asserts were newly recognized by the Supreme Court or that the factual predicates for these

claims were undiscoverable to him, any of which might warrant measuring the limitations period

from a different date.[5]

A judgment becomes final for purposes of § 2244(d)(1)(A) when the Supreme

Court affirms, denies certiorari or, if a petition for certiorari is not filed, when the time for

seeking Supreme Court review has expired. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.

2001). Since Lopez did not petition for a writ of certiorari, his conviction became final 90 days

after the New York Court of Appeals denied his application for leave to appeal. *See Fernandez

v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). The Court of Appeals denied leave on November 30,

1999, and Lopez's conviction therefore became final on February 28, 2000.

Absent tolling, Lopez had until February 28, 2001 to file his habeas petition in

federal court.[6] Lopez filed his petition in May 2011, over 10 years past this deadline. Unless he

---

[5]        With respect to two of his claims, Lopez asserts that the limitations period did not begin to run until years after his conviction became final. Lopez claims that he learned only recently that the prosecution unconstitutionally withheld evidence that Matos had planted a gun in his car and that a carburetor was found at the crime scene. If Lopez could not have discovered the factual predicate for these claims through the exercise of due diligence until sometime within a year of the filing of his federal habeas petition, then his petition is timely with respect to those claims. *See* 28 U.S.C. § 2244(d)(1)(D). Lopez claims that he did not learn that Matos had planted a gun in his car until eight or nine months before he filed his petition, when a friend confronted Matos in the street. He claims that he also learned about the carburetor only recently.

The issue, however, is not when Lopez learned these facts, but when he might have learned them had he exercised "due diligence." *Id.* I conclude that the factual predicate for these claims was discoverable through the exercise of due diligence far earlier than one year before Lopez filed his petition. In 1996, Lopez was able to obtain an affidavit from Matos in which she stated her trial testimony had been false. If Matos was willing to admit to perjury, presumably she would have also admitted to planting a gun in Lopez's car. Similarly, Lopez has not made any showing as to why he could not have learned that a carburetor was found at the crime scene until recently. Accordingly, for the reasons discussed in the text below, I conclude that these claims are untimely as well.

[6]        The last day to file a federal habeas petition is the one year anniversary of the event that triggered the running of the limitations period, "even when the intervening period includes the extra leap year day," as did the relevant period in this case. *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)) (internal quotation marks omitted).

can establish that this entire period was tolled, either by statute or by principles of equity, his petition must be dismissed.

Statutory tolling under § 2244(d)(2) does not impact the timeliness of the petition in this case. Lopez's § 440.10 proceedings concluded *before* his conviction became final. Those proceedings could not toll the limitations period, which only began to run later. Lopez's application for a writ of error *coram nobis* was filed in May 2002, over a year *after* the limitations period had expired. A state collateral proceeding commenced after the statute of limitations has run does not reset the limitations clock.[7] *See Doe v. Menefee*, 391 F.3d 147, 154 (2d Cir. 2004); *Smith v. McGinnis*, 208 F.3d 13, 16–17 & n.2 (2d Cir. 2000).

Lopez argues that equitable tolling applies to his petition. He asserts that both his trial attorney and his post-conviction attorney "abandoned" his case, he could not afford another attorney and he is "not familiar with the law." Pet. ¶ 14, ECF. No. 1. He claims that he specifically instructed his attorney to file a habeas petition, but that his attorney instead pursued a *coram nobis* application in the Appellate Division.

I conclude that equitable tolling does not salvage the timeliness of Lopez's petition. A petitioner's *pro se* status and ignorance of the law are not, on their own, extraordinary circumstances that would warrant equitable tolling. *See Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010) (equitable tolling does not apply "whenever a petitioner must face the daunting procedural obstacles to obtaining habeas review without the assistance of counsel"), *cert. denied*, 132 S. Ct. 190 (2011); *Smith*, 208 F.3d at 18; *Ayala v. Miller,* No. 03-CV-3289 (JG), 2004 WL 2126966, at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status,

---

[7]     If the limitations period was equitably tolled prior to the filing of the *coram nobis* application, then the pendency of the application would have continued to toll the limitations period. However, as explained below, equitable tolling cannot account for the 10-year delay in this case. Thus, even if the 4 ½ months during which the *coram nobis* application was pending were excluded from the calculation, that would not alter my conclusion that the petition is untimely.

10

nor his lack of expertise, provides a basis for equitable tolling of AEDPA's statute of

limitations.").  It is understandably difficult for an incarcerated litigant to pursue federal habeas

relief in a timely fashion without the assistance of counsel.  But there is no right to counsel in a

federal habeas proceeding, *see Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007), and

petitioners who cannot obtain counsel are obligated to proceed *pro se* or not at all.  Thus, the

inability to obtain an attorney does not toll the statute of limitations.

       Lopez's claim that his attorneys abandoned his case also might warrant some

equitable tolling, but not 10 years' worth.  Egregious attorney conduct may constitute

extraordinary circumstances, *see, e.g.*, *Dillon*, 642 F.3d at 362–64; *Baldayaque*, 338 F.3d at 152–

53, and "allegations that a client's attorney has 'effectively abandoned him and prevented him

from filing the habeas petition on time'" may be sufficiently egregious. *Williams v. LaValley*,

No. 11 Civ. 0104 (RJH) (JLC), 2011 WL 2671511, at *5 (S.D.N.Y. June 28, 2011) (quoting

*Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled in part on other grounds by Carey v.

Saffold*, 536 U.S. 214 (2002)); *see also Baldayaque*, 338 F.3d at 152–53 (attorney's failure to

seek federal collateral relief as directed by client constituted extraordinary circumstances);

*Vasquez v. United States*, 733 F. Supp. 2d 452, 456 (S.D.N.Y. 2010) ("A lack of responsiveness

by counsel to Petitioner's communications can, in certain circumstances, be considered an

extraordinary circumstance."); *Morton v. Ercole*, No. 08 Civ. 0252 (RJS) (FM), 2010 WL

890036, at *4 (S.D.N.Y. Mar. 10, 2010) (extraordinary circumstances may exist if there is a

"'sufficient claim of attorney abandonment' where 'a diligent client persistently questioned the

lawyer as to whether he had filed the complaint in time, and he affirmatively represented to her

that he had'" (citation omitted)); *cf. Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)

(holding that "extraordinary circumstances" existed to warrant reopening a previously

adjudicated habeas petition if a petitioner shows "that his lawyer agreed to prosecute a habeas petitioner's case, abandoned it, and consequently deprived the petitioner of any opportunity to be heard at all").  In contrast, an attorney's refusal to pursue habeas relief, on its own, does not establish extraordinary circumstances.  *See Williams*, 2011 WL 2671511, at *5.

If Lopez instructed his attorney to file a habeas petition, and his attorney disobeyed that instruction, then he might have established extraordinary circumstances. However, "a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that 'he acted with reasonable diligence *throughout the period he seeks to toll*.'" *Harper*, 648 F.3d at 138 (citation omitted) (emphasis added); *see also Jenkins*, 630 F.3d at 303 (extraordinary circumstances do not warrant equitable tolling "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances" (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)) (internal quotation marks omitted)).

As year after year passed by, Lopez should not have simply sat by hoping that his attorneys would seek federal habeas relief on his behalf.  He should have eventually determined that he could not rely on them and promptly found a new attorney or, if he could not afford one, prepared a habeas petition *pro se*.  *See Dawson v. Phillips*, No. 05-CV-1355 (NG) (LB), 2005 WL 3479881, at *3 (E.D.N.Y. Dec. 20, 2005) (rejecting equitable tolling argument where even after the petitioner "realized he had been abandoned by his attorney, he still failed to file his petition for an additional two years"); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (rejecting claim of equitable tolling due to attorney's abandonment because "[t]he mere fact that counsel declined to continue to represent petitioner does not justify petitioner's inaction for almost three years").  Thus, even assuming that some period was tolled,

Lopez's lack of reasonable diligence would prevent equitable tolling for anything close to 10 years.  *See Morton*, 2010 WL 890036, at *2 ("Courts generally have found that periods of delay lasting for more than a year do not exhibit due diligence.").  Accordingly, the habeas petition is untimely.

B.      *The Merits*

Even if Lopez's petition were timely, I would deny it for lack of merit.  As explained below, none of the arguments raised in the petition warrants federal habeas relief.[8]

1.      *Corroboration of Accomplice Testimony*

A federal court may grant habeas relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Violations of state law, but not federal law, do not by themselves warrant federal habeas relief.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (internal quotation marks and citations omitted)); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (internal quotation marks and citation omitted) (alteration in original)); *Carvajal v. Artus*, 633 F.3d 95, 107 (2d Cir.), *cert. denied*, 132 S. Ct. 265 (2011).

Thus, Lopez cannot obtain federal habeas relief by merely asserting that New York law required the trial court to instruct the jury that he could not be convicted on the basis of uncorroborated accomplice testimony.  *See* N.Y. Crim. Proc. Law § 60.22(1) ("A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.").

---

[8]      I do not address the government's alternative argument that Lopez's claims regarding his arrest and the withholding of evidence are procedurally defaulted.

He must show that the failure to instruct the jury as to corroboration amounted to a denial of his federal constitutional right to a fair trial.

Lopez cannot make such a showing.  Federal law, unlike New York law, does not require corroboration of accomplice testimony.  *Wesley v. Ercole*, No. 9:06-cv-01118-JKS, 2009 WL 2601242, at *7 (N.D.N.Y. Aug. 20, 2009) ("There is no federal constitutional rule requiring corroboration of accomplice testimony."); *see also Caminetti v. United States*, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."); *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003) ("The testimony of a single accomplice is sufficient to sustain a conviction so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." (internal quotation marks and citation omitted)).  Thus, "regardless of whether there was a violation of state law in denying [Lopez's] request for an accomplice-corroboration instruction, there was no violation of federal law, let alone of any federal constitutional right."  *Young v. McGinnis*, 319 F. App'x 12, 13 (2d Cir. 2009); *see also Wesley*, 2009 WL 2601242, at *7; *Martinez v. Walker*, 380 F. Supp. 2d 179, 183–84 (W.D.N.Y. 2005); *Gaiter v. Lord*, 917 F. Supp. 145, 150 (E.D.N.Y. 1996); *Smithwick v. Walker*, 758 F. Supp. 178, 186 (S.D.N.Y.), *aff'd*, 948 F.2d 1278 (2d Cir. 1991).

Moreover, there was substantial corroborating evidence presented to the jury.  For example, a police officer testified that Lopez had admitted that he set the fire.  Trial Tr. 1104, 1118–19.  In addition, there was testimony from Rivera regarding the threats he received from Lopez, which tended to show Lopez's motive to start the fire, and that he had seen Lopez twice in the vicinity of the crime scene on the day before the fire.  *Id.* at 1312–14, 1319–25.  Thus,

14

Lopez's claim that he was convicted based on uncorroborated accomplice testimony is belied by the trial record.

       2.     *Unlawful Arrest*

      Lopez also seeks habeas relief because he claims he was arrested in his home without probable cause or a warrant.  To the extent Lopez claims the unlawful arrest itself warrants setting aside his conviction, his claim must be rejected.[9]  The Supreme Court has recognized "that illegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *see also United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."); *Jay v. Conway*, No. 04-CV-5589 (FB), 2009 WL 66464, at *2 (E.D.N.Y. Jan. 9, 2009).  "This result follows from the fact that the detention of [a] petitioner seeking habeas relief following a conviction is based not on his original arrest but on his subsequent conviction."  *Van Pelt v. Keane*, No. 90-CV-2072, 1991 WL 81973, at *5 (E.D.N.Y. May 6, 1991).  Lopez's conviction essentially moots the question, for purposes of federal habeas relief, of whether his initial arrest and detention were unjustified.  *See id.*

      Even if Lopez is challenging not just the existence of probable cause for the arrest, but also the use of any evidence obtained as a result of that arrest,[10] his challenge fails.  "As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not

---

[9]     At oral argument, Lopez was asked what evidence he claimed should be suppressed as the fruit of his allegedly unlawful arrest.  Lopez answered that it was his own body.

[10]     Lopez made incriminating statements to the police after his allegedly unlawful arrest, which were introduced at trial.  Lopez could conceivably argue that these statements should have been suppressed as the fruit of his unlawful arrest.  *See, e.g., United States v. Pena*, 961 F.2d 333, 338 (2d Cir. 1992); *United States v. Restrepo*, 890 F. Supp. 180, 198 (E.D.N.Y. 1995) (incriminating statements obtained as a result of an unlawful arrest should be suppressed unless the government shows circumstances that are sufficient to attenuate the taint of the unlawful arrest).

had a full and fair opportunity to litigate that claim in the state court." *Graham v. Costello*, 299 F.3d 129, 133 (2d Cir. 2002); *see also Stone v. Powell*, 428 U.S. 465, 494 (1976).

The Second Circuit has recognized two situations where Fourth Amendment claims are cognizable in federal habeas proceedings because there has not been a full and fair opportunity to litigate the claims in state court.  First, habeas review is available "if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *see also, e.g.*, *Kelly v. Conway*, No. 10-CV-3053 (ENV), 2011 WL 3555823, at *3 (E.D.N.Y. Aug. 11, 2011).  Second, habeas review is available "if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70; *see also, e.g.*, *Kelly*, 2011 WL 3555823, at *3.

Courts have repeatedly upheld New York's procedures for litigating Fourth Amendment claims as facially valid.  *See, e.g.*, *Capellan*, 975 F.2d at 70 n.1; *Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir. 1986); *Kelly*, 2011 WL 3555823, at *3; *Bell v. Ercole*, 631 F. Supp. 2d 406, 416 & n.3 (S.D.N.Y. 2009).  Thus, Lopez cannot show that there were no corrective procedures in place.  Instead, he must show an "unconscionable breakdown" in the underlying process.

Lopez requested a hearing in the trial court to challenge the lawfulness of his arrest.  The court denied the request for a hearing, on the ground that Lopez had set forth only conclusory allegations in support of his request rather than "sufficient allegations of fact." Decision and Order at 1, *People v. Lopez*, No. 7529/94 (N.Y. Sup. Ct. Kings County Oct. 3, 1994).

The trial court's decision that Lopez's conclusory allegations were insufficient to warrant an evidentiary hearing was not an unconscionable breakdown in the procedures for resolving his Fourth Amendment claim.[11]  Indeed, the papers Lopez submitted in support of his request for a hearing on the legality of his arrest assert that he was "arrested . . . *at the 90th Precinct*."  Affirmation in Support of Motion at 14, *People v. Lopez*, No. 7529/94 (N.Y. Sup. Ct. Kings County Sept. 12, 1994) (emphasis added).  Lopez did not even assert to the trial court, as he does now, that his arrest was unlawful because he was arrested in his *home* without a warrant. The trial court cannot be faulted for denying a hearing on the record before it, and its decision certainly does not reflect an unconscionable breakdown in the process for litigating Fourth Amendment claims.  *See, e.g.*, *Harrison v. Smith*, No. 05 Civ. 5953 (JGK) (FM), 2011 WL 3370391, at *10 (S.D.N.Y. July 14, 2011) (denial of suppression motions without a hearing was not an unconscionable breakdown); *Cimino v. Conway*, No. 08-CV-6318 (MAT), 2011 WL 815677, at *9 (W.D.N.Y. Mar. 2, 2011) ("The fact that the suppression court denied petitioner's motions without a hearing does not establish that the state court failed to conduct a reasoned method of inquiry into relevant questions of fact and law, so as to give rise to an unconscionable breakdown in the underlying process." (internal quotation marks and citation omitted)); *Lin v. Filion*, No. 02 Civ. 2878, 2004 WL 911777, at *7 (S.D.N.Y. Mar. 19, 2004) ("The failure to conduct a hearing because of petitioner's failure to comply with facially reasonable and neutrally applied procedural requirements is plainly not an 'unconscionable breakdown' of otherwise adequate state suppression procedures."), *report and recommendation adopted by* 2004 WL 895572 (S.D.N.Y. Apr 26, 2004); *Gonzalez v. Superintendent, Sullivan Corr. Facility*, 761

---

[11]     Under New York law, a criminal defendant is not entitled to a suppression hearing unless he provides "sworn allegations of fact" that establish a legal basis for suppression.  N.Y. Crim. Proc. Law § 710.60(1) & (3); *see also People v. Bryant*, 869 N.E.2d 7, 9 (N.Y. 2007); *People v. Mendoza*, 624 N.E.2d 1017, 1021–24 (N.Y. 1993).

F. Supp. 973, 977 (E.D.N.Y. 1991) ("The fact that petitioner was denied his request for . . . a [probable cause] hearing does not, in and of itself, affect the legitimacy of the state process.").[12]

Furthermore, Lopez did not raise any Fourth Amendment claims in his direct appeal.  He thus failed to pursue the full process available to him to litigate his Fourth Amendment claim.[13] There generally is no unconscionable breakdown where a litigant has failed to seek available appellate review of a Fourth Amendment claim.  *See, e.g.*, *Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir. 1986); *Mercado v. Lempke*, No. 07 Civ. 9865 (VB) (PED), 2011 WL 5223604, at *15 (S.D.N.Y. July 25, 2011), *report and recommendation adopted by* 2011 WL 5223602 (S.D.N.Y. Nov. 1, 2011); *see also Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (en banc).

Accordingly, I conclude that Lopez had a full and fair opportunity to litigate his Fourth Amendment claim in state court.  Federal habeas review of this claim is therefore unavailable.

3.      *Withheld Evidence*

Finally, Lopez seeks habeas relief because the state knowingly withheld evidence and failed to disclose all the benefits provided to Matos in exchange for her testimony.  Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution has an obligation to disclose evidence in its possession that is favorable to the defendant and material.  *See id.* at 87.  Evidence is

---

[12]      Lopez might have a claim that his trial counsel provided ineffective assistance by failing to submit sufficient factual allegations in support of his request for a hearing.  However, "ineffective assistance of counsel does not by itself constitute an unconscionable breakdown such that a habeas petitioner may obtain review of a Fourth Amendment claim."  *Watson v. New York*, No. 07 Civ. 1111 (RJS) (RLE), 2011 WL 4639812, at *4 (S.D.N.Y. Oct. 6, 2011) (quoting *Wallace v. Artus*, No. 05 Civ. 0567 (SHS) (JCF), 2006 WL 738154, at *7 (S.D.N.Y. Mar. 23, 2006)) (internal quotation marks omitted).  In any event, Lopez has not asserted he received ineffective assistance from his trial counsel in his petition nor did he raise any such claim at oral argument.

[13]      Lopez's failure to appeal the Fourth Amendment issue raises additional obstacles to obtaining federal habeas relief on this ground:  exhaustion and procedural default.  I need not address these issues since I reject the Fourth Amendment claim on other grounds.

material for *Brady* purposes, "only 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011) (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)) (other internal quotation marks and citations omitted), *cert. denied*, No. 11-6834, 2011 WL 4901428 (U.S. Nov. 14, 2011).  The prosecution must disclose not only exculpatory evidence, but also evidence that could be used to impeach a government witness.  *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *Persico*, 645 F.3d at 111.

   a. *Disclosure of Benefits Provided to Matos*

    The Kings County Supreme Court, in denying Lopez's § 440.10 motion, rejected his claim that the government had failed to disclose the full extent of the benefits provided to Matos.  To obtain habeas relief, Lopez would have to show that this decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Portalatin v. Graham*, 624 F.3d 69, 79 (2d Cir. 2010) (en banc), *cert. denied*, 131 S. Ct. 1691, *and cert. denied*, 131 S. Ct. 1693 (2011).  This highly deferential standard is intended to be "a 'guard against *extreme malfunctions* in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)) (emphasis added).  State court decisions must "be given the benefit of the doubt," *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (internal quotation marks and citation omitted), and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Richter*, 131 S. Ct. at 786.

The government conceded in state court that it did not disclose all of the details regarding the benefits it provided to Matos in exchange for her cooperation.  It did not specifically disclose that it had provided some clothing to Matos after her own clothing was lost.  The government contended the amount spent on this clothing was less than $100.

The other substantial benefits provided to Matos were disclosed, however, and many of these facts were brought out during cross-examination.  Both the original cooperation agreement and an amended cooperation agreement were introduced in evidence at trial.  Matos admitted during her testimony that if the government was satisfied with her testimony against Lopez she would get probation instead of a possible prison sentence.  Trial Tr. 676.  Matos further admitted that the government was paying for her to stay at a hotel and would pay for her relocation out of New York.  *Id.* at 681, 683–84.

Given these facts, the state court's rejection of Lopez's *Brady* claim was not contrary to or an unreasonable application of clearly established federal law.  It was not unreasonable to conclude that the fact that Matos had received some clothing from the government was not sufficiently material when viewed in the context of the far more substantial benefits she had received.  The marginal benefit of the clothing provided to Matos is negligible when compared to the other benefits she received.  Since the jury was aware that Matos was avoiding prison time and being housed and relocated at government expense, it was not unreasonable for the state court to conclude that the undisclosed benefit was immaterial for *Brady* purposes.  *See United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993).  The decision certainly is not so unreasonable that it constitutes an "extreme malfunction" warranting federal habeas relief.

b.    *Other Evidence*

Lopez claims the government withheld two other pieces of evidence:  that Matos had planted a gun in his car and that a carburetor was found at the crime scene.  Lopez asserted these claims for the first time at oral argument.  He never raised them in any of his state court proceedings.  I need not address issues of exhaustion and procedural default, however, because I conclude that these claims are meritless.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

I assume, without deciding, that if the government knew Matos had planted a gun in Lopez's car, it would have been required to disclose that fact to Lopez.  Lopez might have used this information during cross-examination to establish that Matos intended to incriminate him.  That would have supported the defense's theory that Matos, not Lopez, was responsible for the fire.

Lopez has failed entirely, however, to offer any evidence in support of his claim that Matos planted a gun in his car, let alone that the government knew about it.  The government asserts that it is not aware of any gun having been found in Lopez's car, let alone one planted by Matos, and the record supports this.  The only evidence that Matos planted a gun is Lopez's own statement at oral argument.  He claims he learned this information from a friend who ran into Matos on the street.  However, he has not submitted affidavits from Matos or his friend.  Furthermore, even if Matos had planted a gun, Lopez has not demonstrated that the government knew or should have known she had done so.  There can be no *Brady* violation if the government fails to disclose information of which it is unaware.  *See Locascio*, 6 F.3d at 949 (no *Brady*

21

violation where "there is no evidence that the prosecution team in the instant case was aware of the reports that have subsequently come to light"); *Simmons v. Fisher*, No. 02 Civ. 4811 (SHS) (MHD), 2006 WL 2129770, at *10 (S.D.N.Y. July 26, 2006).  Since Lopez bears the burden of proving a constitutional violation, *see Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997), the absence of evidence is fatal to his claim.

Lopez also claims the government failed to provide crime scene photographs which show a carburetor and a melted bucket.  Lopez argues the presence of the carburetor is exculpatory because it tends to show that Rivera had set the fire.  Lopez argues that Rivera was an automobile mechanic, and thus had the ability to start a fire with the carburetor.  He further argues that Rivera lied about his profession – by testifying that he repaired wheelchairs instead of cars – in an effort to dissociate himself from the method he allegedly used to set the fire.

Even assuming that the government failed to provide the photographs to Lopez or his counsel prior to trial, I conclude that there is no reasonable probability that disclosure of the photographs would have resulted in a different outcome at trial.  The theory that Rivera set fire to his own apartment building, where his parents were sleeping, in order to frame Lopez would be difficult for a jury to believe.  Where the only evidence supporting this theory is the presence of a carburetor at the crime scene and Rivera's alleged lie about his profession, no rational jury could accept it.  I therefore conclude that the photographs are immaterial for *Brady* purposes.

CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied.  As Lopez has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c)(2).

So ordered.

John Gleeson, U.S.D.J.

Dated:  Brooklyn, New York
        December 7, 2011